Christopher K. Kiplok
Dustin P. Smith
Erin E. Diers
Elizabeth A. Beitler
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000

*Counsel to the Joint Managers of*
*Euro Exchange Securities UK Limited*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>Euro Exchange Securities UK Limited,<br><br>        Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-_____ |

**VERIFIED PETITION FOR RECOGNITION OF**
**FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

Duncan Perring and James Bennett, in their capacities as duly appointed joint managers (together, the "Joint Managers") of Euro Exchange Securities UK Limited (the "Company" or the "Debtor"), a company incorporated in England and Wales against which an application for special administration was filed before the High Court of Justice, Business and Property Courts of England and Wales, Insolvency and Companies List (ChD) (the "UK Court") in case number CR-2026-004370 (the "UK Proceeding") on June 2, 2026, by and through their undersigned counsel, respectfully submit this verified petition (the "Verified Petition" and, together with the *Chapter 15 Petition for Recognition of a Foreign Proceeding (Official Form 401)* filed contemporaneously herewith, the "Petition") and requests recognition of the UK Proceeding as a "foreign main proceeding" and certain related relief. In support of this Petition, the Joint Managers have filed contemporaneously herewith (a) the *Declaration of James Bennett in Support of the (I) Verified*

*Petition for Recognition of Foreign Main Proceeding and Related Relief and (II) Emergency Motion for Entry of Orders Granting (A)* Ex Parte *Relief and (B) Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Bennett Declaration") and (b) the *Declaration of Ian Stuart Johnson in Support of the (I) Verified Petition for Recognition of Foreign Main Proceeding and Related Relief and (II) Emergency Motion for Entry of Orders Granting (A)* Ex Parte *Relief and (B) Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Johnson Declaration"), each of which is incorporated herein by reference along with the exhibits thereto. In further support, the Joint Managers respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      In their capacities as joint managers of the Debtor, the Joint Managers have deemed the filing of this chapter 15 case (this "Chapter 15 Case") as a necessary step to perform their statutory functions as joint managers pursuant to the Payment and Electronic Money Institution Insolvency Regulations 2021 (S.I. 2021/716) (the "PESAR Regulations") to ensure the protection of customer funds.

2.      The Debtor is an electronic money institution, licensed by and subject to the supervision of the United Kingdom's Financial Conduct Authority (the "FCA"), which is responsible for, among other things, protecting the public's interest in efficient and transparent financial markets and payment systems in the United Kingdom.

3.      Since 2020, the FCA has engaged the Debtor regarding evidence of its lax adherence to various applicable regulatory schemes, including those relating to anti-money laundering ("AML") systems and controls. Despite numerous interventions and guidance provided, the Debtor failed to meaningfully rectify the identified inadequacies of its internal AML policies and procedures in the six years since the Debtor was first examined. As a result of this failure to improve its adherence to prevailing regulations, on June 2, 2026, the FCA, in accordance

2

with their powers under English law, imposed certain regulatory measures which restricted the Debtor's ability to conduct its regulated activities.

4.     On June 2, 2026, the FCA applied to the UK Court to place the Debtor in special administration proceedings on the basis that (i) the coming into force of these regulatory restrictions on the Debtor's only authorized business activities was such that the Debtor was or would likely become unable to pay its debts because it could not continue its existing business or make required payments under a contract for electronic money issuance or payment services and/or (ii) it was fair to put the Debtor into special administration.  Following an *ex parte* hearing, the UK Court entered an interim order pending the final determination of the FCA's application (the "UK Order," a true and correct copy of which is attached to the Bennett Declaration as **Exhibit 1**), appointing the Joint Managers to manage the affairs, business, and property of the Debtor.

5.     The Joint Managers commenced this Chapter 15 Case to seek recognition of the UK Proceeding in order to give effect to the UK Proceeding in the United States, and to ensure the Joint Managers' orderly management of the Debtor's affairs in England and Wales and in the United States.  This Chapter 15 Case is necessary to preserve the Debtor's assets in the United States, which includes cash held in certain accounts (the "US Bank Accounts") with Community Federal Savings Bank ("CFSB") in New York.[1]

6.     For the reasons set forth herein, recognition of the UK Proceeding is warranted because all of the requirements set forth in sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") are satisfied, and such recognition would be in the best interests of the Debtor and its stakeholders.

---

1.  CFSB is also subject to regulatory oversight due to concerns regarding deficiencies in its Bank Secrecy Act/Anti-Money Laundering compliance program.  *See* Consent Order against Community Federal Savings Bank, dated April 24, 2026, available at https://www.occ.gov/news-issuances/news-releases/2026/nr-occ-2026-40.html.

3

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), titled *In the Matter of The Referral of Matters to the Bankruptcy Judges*, 69 B.R. 186, App. 3 (E.D.N.Y. August 28, 1986) (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), which expressly includes "recognition of foreign proceedings and other matters under chapter 15 of title 11."

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1410.

9.      This Chapter 15 Case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of this Verified Petition for recognition of the UK Proceeding under section 1515 of the Bankruptcy Code.

10.     The legal predicates for the relief requested herein are sections 1504, 1507, 1509, 1510, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

**RELIEF REQUESTED**

11.     The Joint Managers requests entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Recognition Order"):

    (a) recognizing the UK Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code;

    (b) finding that the Joint Managers are the duly appointed "foreign representatives" of the Debtor within the meaning of section 101(24) of the Bankruptcy Code and are authorized to act on behalf of the Debtor in this Chapter 15 Case;

    (c) granting all relief afforded to foreign main proceedings automatically upon recognition, including the "automatic stay" under section 362 of the Bankruptcy Code, as of right under section 1520(a) of the Bankruptcy Code, or, if not as of right, then as

4

additional relief to the extent authorized by section 1521 of the Bankruptcy Code;

(d) waiving the 14-day of effectiveness of the Recognition Order; and

(e) granting such other relief as this Court may consider just and proper.

## BACKGROUND

### A.    The Debtor

12.    Incorporated in England and Wales under the Companies Act 1985 on October 25, 2007, the Debtor is an authorized electronic money institution.  Bennett Decl. ¶¶ 4-5.  It provides currency exchange, payment services, and electronic money services to its customers, enabling them to transmit funds electronically to different countries and in different currencies.  *Id.* ¶ 5.  As an electronic money institution, the Debtor is licensed by and subject to the supervision of the FCA.  *Id.*  Its registered office is located at 107 Great Portland Street, London, United Kingdom W1W 6QG.  *Id.* ¶ 4.

13.    The Debtor's board is composed of three directors: Luis Alberto Gasparini, Sr., Luis Alberto Gasparini, Jr., and Sasha Ramjiawan.  *Id.* ¶ 7.

14.    The Debtor maintains several bank accounts in the U.K. and the U.S., as well as other locations worldwide.  *Id.* ¶ 8.  A significant proportion of the Debtor's cash is maintained in U.S. dollars held in the US Bank Accounts.  *Id.*

### B.    FCA Supervision and Commencement of the UK Proceeding

15.    Since 2020, the Company has been subject to sustained supervisory engagement by the FCA due to perceived weaknesses and inadequacies in its policies and procedures relating to financial crime controls and adherence to relevant regulations.  *Id.* ¶ 10.  On June 2, 2026, the FCA—in the exercise of its statutory powers under applicable law—imposed certain regulatory measures which restricted the Debtor's ability to conduct its regulated activities.  *Id.* ¶ 12.

16.    As a result of the FCA's restrictions on the Company's only authorized business activities, the FCA considered that the Company would likely be rendered insolvent or otherwise unable to make required payments ("Ground A"). *Id.* ¶ 13. Moreover, taking into account the Company's failure to meaningfully correct its regulatory adherence over the past six years, the FCA concluded that it would be fair to place the Company into special administration ("Ground B"). *Id.* In reaching this conclusion, among other things, the FCA considered that the appointment of special administrators was fair since it was necessary to: (i) take over the Company's business to mitigate the risk of non-compliance with the relevant regulatory regimes to which the Company is subject and the restrictions on the Company imposed by the FCA; (ii) divest Mr. Gasparini, Sr. and his family of management control of the Company and transfer such control to the special administrators, who act as officers of the UK Court; (iii) identify and preserve the Company's assets, books and records; (iv) conduct a reconciliation of the Company's funds to ensure that any funds which may represent the proceeds of crime are identified and appropriately reported to the authorities; and (v) distribute monies appropriately to legitimate customers once money laundering concerns in respect of such customers have been properly resolved. *Id.* ¶ 14.

17.    Accordingly, the FCA applied to the UK Court, pursuant to the PESAR Regulations, to put the Company into special administration proceedings on the basis of Ground A and/or Ground B on June 2, 2026. *Id.* ¶ 15. On June 4, 2026, the UK Court entered an interim order pending the final determination of the FCA's application appointing the Joint Managers pursuant to the UK Order. *Id.* ¶ 16. The UK Order and PESAR Regulations authorize the Joint Managers, as court-appointed officers, to take control of the Company, to carry out a full investigation of its affairs, and to use the tools available to them to trace, secure and preserve the

6

Company's assets, including by commencing such legal actions as might be necessary for the protection or recovery of assets or documents of the Debtor.  Johnson Decl. ¶ 37; *see also* UK Order, Sched. 1, ¶¶ 5, 7.

18.    In the UK Proceeding, a statutory moratorium broadly akin to the Bankruptcy Code's automatic stay came into effect.  Johnson Decl. ¶ 23.  The effect of the moratorium is to provide the Joint Managers with "breathing room" as described above to formulate proposals with respect to the Debtor, its customers, its creditors, and its assets in accordance with the statutory objectives of the PESAR Regulations without the Debtor being subject to new or continuing litigation or claims in England and Wales.  *Id.* ¶ 25.

19.    However, the UK Proceeding and therefore the moratorium does not have extraterritorial effect in a foreign country.  *Id.*  As discussed above, the Debtor maintains several US Bank Accounts.  Bennett Decl. ¶ 8.

### C.    Commencement of the Chapter 15 Case

20.    The Joint Managers commenced this Chapter 15 Case to seek recognition of the UK Proceeding in order to preserve assets (including customer assets) maintained in the US Bank Accounts, to give effect to the UK Proceeding in the United States, and to ensure an orderly and consistent management of the Debtor's affairs by the Joint Managers in England and Wales and in the United States.  *Id.* ¶¶ 17-18.

21.    The Joint Managers require the protections afforded to foreign representatives under chapter 15 of the Bankruptcy Code and, more specifically, recognition and relief under sections 1520 and 1521 of the Bankruptcy Code, in order to ensure orderly and consistent administration of the Debtor's affairs in the United States and England and Wales.  *Id.* ¶ 19. Given the allegations of impropriety with respect to the Debtor's internal policies and procedures and failure to adhere to supervisory authority by the Debtor's management, it is possible that either the

7

Debtor's management or customers may attempt to access the Debtor's assets in the United States despite their lack of authority to do so as a result of the UK Proceeding. *Id.* Allowing such actions would impair the ability of the Joint Managers to maintain assets for the benefit of the Debtor's customers and subsequently conduct an orderly proceeding to return customer property and may permit suspected proceeds of criminal activity to transfer high-risk customers of the Debtor. *Id.* ¶ 20. Through recognition of the UK Proceeding, the Joint Managers seek to prevent any further evasion of the relevant U.K. regulatory schemes aimed at ensuring the integrity of U.K. financial systems, reducing the risk of financial crime and money laundering, and to protect customer funds. *Id.* ¶ 21.

## BASIS FOR RELIEF

### I.    The Debtor Is Eligible for Chapter 15 Relief.

22.    As a threshold matter, to be eligible for recognition under chapter 15 of the Bankruptcy Code, a company must first be eligible to be a debtor pursuant to section 109(a). *See, e.g.*, *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 246-47 (2d Cir. 2013) (holding that section 109(a)'s eligibility requirements apply to chapter 15 proceedings). Section 109(a) provides that "only a person that resides or has domicile, a place of business, or property in the United States, may be a debtor under this title." 11. U.S.C. § 109(a). "As a general matter, courts that have construed the 'property' requirement in Section 109 'with respect to foreign corporations and individuals have found the eligibility requirement satisfied by even a minimal amount of property located in the United States.'" *In re B.C.I. Fins. Party Ltd.*, 583 B.R. 288, 294 (Bankr. S.D.N.Y. 2018).

23.    In this case, the Company is eligible as a debtor pursuant to section 109(a) because it has assets in the United States including the US Bank Accounts, which hold a significant proportion of the Debtor's cash.

**II.**     **Recognition of the UK Proceeding as a "Foreign Main Proceeding" Is Appropriate.**

24.     Section 1517(a) provides that, after notice and a hearing, the court shall enter an order recognizing a foreign proceeding if: "(1) such foreign proceeding . . . is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code." *See* 11 U.S.C. § 1517(a).  Recognition is mandatory if all three requirements of section 1517(a) are met.  *See id.*; *In re Millard*, 501 B.R. 644, 653 (Bankr. S.D.N.Y. 2013).

25.     As set forth below, each of the foregoing requirements has been satisfied in this case.

**A.**     **The UK Proceeding Is a "Foreign Proceeding."**

26.     Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

*See* 11 U.S.C. § 101(23).

27.     Bankruptcy courts have separated the statutory factors into seven elements, including "(i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation." *See, e.g.*, *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)).  The

UK Proceeding satisfies all seven requirements and therefore qualifies as a foreign proceeding within the meaning of the Bankruptcy Code.

28.    ***The UK Proceeding Is a Proceeding.***    The hallmark of a "proceeding" is "a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice." *In re Betcorp Ltd.,* 400 B.R. at 277-78.  The UK Proceeding is a proceeding commenced under a statutory framework consisting of the Banking Act 2009, the Insolvency Act 1986, and subordinate legislation thereto, primarily consisting of the PESAR Regulations.  *See* Johnson Decl. ¶¶ 12, 14.  Specifically, as described in more detail in the Johnson Declaration, the PESAR Regulations specify the acceptable procedures for implementing a special administration order, including, among other things, commencing the proceeding.  The PESAR Regulations also provide three overarching objectives which special administrators are required to pursue, including ensuring the return of customer funds as soon as practicable, timely engaging with payment systems operators, and either preserving the subject company as a going concern or winding it up in the best interests of its customers and creditors.  *See id.* ¶ 19.  Accordingly, the UK Proceeding is a "proceeding" within the meaning of 11 U.S.C. § 101(23).

29.    ***The UK Proceeding Is Judicial in Character.***    The UK Proceeding is judicial in nature because it has been commenced and is pending before the UK Court.

30.    ***The UK Proceeding Is Collective in Nature.***    A proceeding is "collective" in nature if it "considers the rights and obligations of *all* creditors." *In re Ashapura Minechem Ltd.*, 480 B.R. at 136 (quoting *In re Betcorp, Ltd.*, 400 B.R. at 281) (emphasis original); *see* 8 COLLIER ON BANKRUPTCY ¶ 1501.03[1] (16th ed. 2018) ("The 'collective proceeding' requirement is

intended to limit access to chapter 15 to proceedings that benefit creditors generally and to exclude proceedings that are for the benefit of a single creditor."). Here, the Joint Managers would be appointed for the benefit of all the Debtor's customers and creditors as a whole. *See* Johnson Decl. ¶ 21. In furtherance of their legal duties and obligations pursuant to the UK Order and the PESAR Regulations, special administrators must, among other things, (i) provide notice to all of the Debtor's customers and creditors of the UK Proceeding; (ii) prepare and distribute to all customers and creditors of the Debtor a proposal for achieving, among other things, the return of customer property; and (iii) solicit the consent of the Debtor's customers and creditors, each as a separate class, for such proposal. *Id.* ¶¶ 18-21. The special administrator cannot, subject to limited exceptions in the case of an express direction by the FCA (which do not presently apply in this case), advance a proposal without the consent of a majority of both the customers and the creditors, voting separately. *Id.* ¶¶ 35-36.

31.    ***The UK Proceeding Is Located in a Foreign Country.*** The UK Proceeding was commenced before the UK Court, which exercised its authority by, among other things, issuing the UK Order. *See id*. ¶ 4. There can be no doubt that the UK Proceeding is located in a foreign country.

32.    ***The UK Proceeding Relates to Insolvency or the Adjustment of Debt.*** The UK Proceeding is governed by the PESAR Regulations, which provide a modified insolvency procedure for payment institutions and electronic money institutions. *See id*. ¶¶ 4, 12.

33.    ***The UK Proceeding Subjects the Debtor's Assets and Affairs to a Foreign Court's Control or Supervision.*** The UK Proceeding is overseen by the UK Court, which has jurisdiction over the Debtor. *See id*. ¶¶ 3-5.

34.      ***The UK Proceeding Is for the Purpose of Either Reorganizing or Liquidating the***
***Debtor.***  It is incumbent on the special administrator appointed to oversee the debtor to make an assessment as to whether it is in the customers' and creditors' best interests to either "rescue" the debtor as a going concern or wind up the debtor's affairs.  The PESAR Regulations also empower the special administrators to undertake the appropriate steps to action whichever path is in customers' and creditors' best interests.  *See id*. ¶ 19.

**B.       The UK Proceeding Is a "Foreign Main Proceeding."**

35.      The UK Proceeding satisfies the definition of "foreign main proceeding" as set forth in section 1502(4) of the Bankruptcy Code.  This section defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).

36.      While the Bankruptcy Code does not define "center of main interests" ("COMI"), section 1516(c) provides that, in the absence of evidence to the contrary, a non-individual debtor's registered office "is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c); *In re Gerova Fin. Grp., Ltd*., 482 B.R. 86, 91 (Bankr. S.D.N.Y. 2012); *see also* H.R. Rep. No. 109-31, pt. 1, at 112–13 (2005) ("The presumption that the place of the registered office is also the center of the debtor's main interest is included for speed and convenience of proof where there is no serious controversy.").  The relevant time for determining a debtor's COMI is the date on which the chapter 15 petition is filed.  *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013).

37.      The Debtor's registered office is located in the UK and has been since the Debtor's incorporation.  *See* Bennett Decl. ¶ 4.  Moreover, the UK Proceeding was not initiated by the Debtor or their former controllers, but by the FCA, acting on fairness grounds (as well as

12

insolvency grounds), negating any inference of COMI manipulation. Accordingly, the Debtor is entitled to the statutory presumption that its COMI is located in the UK.

38.     Even if the presumption did not apply, the Debtor's COMI would still be located in the UK. Other factors that courts may look to in identifying a debtor's COMI, none of which on their own is determinative, include the location of the debtor's headquarters, directors, and assets, and the jurisdiction of whose law would apply to most disputes. *See In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007). The Debtor was incorporated pursuant to English law. *See* Bennett Decl. ¶ 4. Based on available information, the Joint Managers understand that the majority of the Debtor's board have residential and contact addresses in the United Kingdom. *See id.* ¶ 7. The Debtor has several bank accounts located in England. *See id.* ¶ 8. Additionally, the Joint Managers were appointed by the UK Court, derive their authority exclusively from the UK Order, are officers of the UK Court and are required to report to and are supervised by the UK Court. The UK is the jurisdiction whose law governs the Debtor's corporate existence, the special administration proceeding, and the Joint Managers' powers and obligations.

39.     Accordingly, pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code, the UK Proceeding should be recognized as a "foreign main proceeding."

### C.     The Joint Managers Qualify as "Foreign Representatives."

40.     The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as: "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). "Person" is defined in section 101(41) to include "individuals." *See* 11 U.S.C. §101(41).

13

41.     In this case, the Joint Managers were appointed to the Debtor in the UK Proceeding pursuant to the UK Order.  *See* Bennett Decl. ¶ 16.  The UK Order and PESAR Regulations provide that the Joint Managers have broad powers to manage the affairs, business, and property of the Debtor.  *See* Johnson Decl. ¶ 37; *see also* UK Order ¶ 6.  Moreover, the UK Order authorized the Joint Managers to "commence such action in [England] or abroad for the protection and/or for the recovery of documents or assets as may be required."  *Id.* Sched. 1, ¶ 7.  Accordingly, the Joint Managers have been authorized by the UK Court to act as representatives of the UK Proceeding.

42.     Because the Joint Managers in this case are individuals who have been duly appointed as the joint managers for the Debtor and are authorized under English law to administer the Debtor's assets and affairs, the second requirement for the entry of an order recognizing the UK Proceeding under section 1517(a) of the Bankruptcy Code is satisfied.

**D.     The Petition Meets the Requirements of Section 1515 of the Bankruptcy Code.**

43.     The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).  Section 1515 of the Bankruptcy Code sets forth the following:

> (a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
>
> (b) A petition for recognition shall be accompanied by—
>
>> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
>>
>> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

(c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

(d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

11 U.S.C. § 1515.

44.      Here, all of the requirements have been met.  *First*, the Chapter 15 Case was duly and properly commenced by the Joint Managers through the filing of the Petition as required by section 1515(a) of the Bankruptcy Code.  *Second*, evidence of the existence of the UK Proceeding and the appointment of the Joint Managers as foreign representatives thereof has been provided to the Court as required under section 1515(b)(1) and (d) of the Bankruptcy Code.  *See* Bennett Decl. ¶ 15-16.  *Third*, in accordance with section 1515(c) of the Bankruptcy Code, the UK Proceeding is the only foreign proceeding currently pending with respect to the Debtor.

**E.      Recognition Would Not Be Manifestly Contrary to U.S. Public Policy.**

45.      The purpose of chapter 15 is set forth in section 1501 of the Bankruptcy Code and includes:

(1) cooperation between (a) courts of the United States, the United States Trustee, trustees, examiners, debtors, and debtors in possession; and (b) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; (2) greater legal certainty for trade and investment; (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor; (4) protection and maximization of the value of the debtor's assets; and (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

15

11 U.S.C. § 1501(a).  Recognition of the UK Proceeding as a foreign main proceeding comports with all of these objectives.

46.    While section 1506 of the Bankruptcy Code provides that a court may decline to grant relief if the action would be "manifestly contrary to the public policy of the United States," 11 U.S.C. § 1506, the public policy exception is "narrowly construed."  *In re Sino-Forest Corp.*, 501 B.R. 655, 665 (Bankr. S.D.N.Y. 2013); *see also In re Toft*, 453 B.R. 186, 195 (Bankr. S.D.N.Y. 2011) ("[T]hose courts that have considered the public policy exception codified in [section] 1506 have uniformly read it narrowly and applied it sparingly. . .").

47.    Far from contravening U.S. public policy, recognition of the UK Proceeding affirmatively advances U.S. policy interests.  The U.S. has its own AML framework for preventing potential criminal proceeds from permeating the U.S. economy.  The UK Proceeding was commenced by the FCA in the public interest to facilitate similar goals.

48.    For the reasons set forth above, the Joint Managers respectfully submit that all of the requirements of section 1517(a) have been satisfied and, thus, entry of an order recognizing the UK Proceeding as a foreign main proceeding is proper.

**III.    The Joint Managers Are Entitled to Automatic Relief Under Section 1520 of the Bankruptcy Code.**

49.    Recognition of a foreign main proceeding triggers the automatic protections set forth in section 1520(a) of the Bankruptcy Code—most critically, the application of the automatic stay under section 362(a) to the Debtor and its property within the territorial jurisdiction of the United States.  11 U.S.C. § 1520(a).  These protections are of particular importance here, where allegations of impropriety have been made against the Debtor's management.

50.    Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main proceeding under section 1517, the Joint Managers respectfully

submit that no further showing is required to the extent the Court recognizes the UK Proceeding

as a foreign main proceeding.

**IV.     The Joint Managers Are Entitled to Relief Under Sections 1521(a)(5) and (b) of the Bankruptcy Code.**

51.     Section 1521 provides for relief that may be granted upon recognition.  Section

1521(a)(5) provides:

> (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including . . .
>
> > (5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court . . . .

11 U.S.C. § 1521(a)(5).

52.     Section 1521(b) provides that "[u]pon recognition of a foreign proceeding, whether

main or nonmain, the court may, at the request of the foreign representative, entrust the distribution

of all or part of the debtor's assets located in the United States to the foreign representative or

another person, including an examiner, authorized by the court, provided that the court is satisfied

that the interests of creditors in the United States are sufficiently protected."

53.     The Joint Managers seek an order entrusting the administration and distribution of

all the Debtor's assets in the United States to the Joint Managers, as the Debtor's foreign

representatives.  This relief would effectuate the statutory purposes of chapter 15, protect the

Debtor's assets, and protect the interests of creditors.

54.     *First*, such an order would help secure "fair and efficient administration of cross-

border insolvencies that protects the interests of all creditors, and other interested entities,

including the debtor."  11 U.S.C. § 1501(a)(3).  The crux of the UK Proceeding is to ultimately

17

return customer and creditor property, which may be maintained in the US Bank Accounts. It is therefore imperative that the Joint Managers obtain control over the Debtor's US Bank Accounts.

55.     *Second*, the requested relief would promote comity and cooperation between the courts of the United States and the courts of the United Kingdom.    *See* 11 U.S.C. § 1501(a)(1) (providing that cooperation between US courts and foreign courts in insolvency matters is one of the purposes of chapter 15); *In re Avanti Commc'ns. Grp. PLC*, 582 B.R. 603, 616 (Bankr. S.D.N.Y. 2018) ("In deciding whether to grant appropriate relief or additional assistance under chapter 15, courts are guided by principles of comity and cooperation with foreign courts."). Pursuant to the UK Order, the UK Court appointed the Joint Managers to, among other things, "locate, protect, secure, take possession of, collect, get in and protect all the property and assets (of whatever nature) of" the Debtor. *See* UK Order, Sched. 1, ¶ 1. Accordingly, granting the relief requested would further the interests of comity and cooperation with foreign courts in insolvency matters.

56.     *Third*, the requested relief would protect the Debtor's assets. Given the allegations of impropriety by the Debtor's management, they may theoretically attempt to improperly divert or access the Debtor's assets.

57.     For all of the reasons set forth above, the Joint Managers respectfully submit that entry of an order granting the requested relief under section 1521(a)(5) and (b) is proper.

**V.     <u>Waiver of the 14-Day Stay of Effectiveness Should Be Granted.</u>**

58.     The Authorized Foreign Representatives request that the Court cause the Order to become effective immediately upon entry, notwithstanding the 14-day stay of effectiveness imposed by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), including Bankruptcy Rules 1018, 7062 and 9014.

59.     The facts and circumstances of this Chapter 15 Case demand immediate relief for the reasons laid out above.

60.     This Court routinely grants waivers of the 14-day stay of effectiveness in chapter 15 cases.  *See, e.g.*, *In re Fleming Int'l Reinsurance Ltd.*, No. 25-12353 (JPM) [ECF No. 39] (Bankr. S.D.N.Y. Nov. 20, 2025); *In re Northeast Ins. Co. Ltd.*, No. 25-12275 (MEW) [ECF No. 9] (Bankr. S.D.N.Y. Nov. 17, 2025); *In re Yuzhou Grp. Holdings Co. Ltd.*, No. 24-11441 (LGB) [ECF No. 26] (Bankr. S.D.N.Y. May 2, 2025); *In re New Look Secured Issuer plc*, No. 19-11005 (SMB) [ECF No. 14] (Bankr. S.D.N.Y. May 3, 2019); *In re Lehman Brothers Int'l (Europe) (in administration)*, No. 18-11470 (SCC) [ECF No. 15] (Bankr. S.D.N.Y. June 19, 2018); *In re CGG S.A.*, No. 17-11636 (MG) [ECF No. 25] (Bankr. S.D.N.Y. Dec. 21, 2017).

## NOTICE

61.     Notice of this Verified Petition will be provided to: (a) the Debtor, (b) the Office of the United States Trustee for the Eastern District of New York, (c) parties entitled to notice under Bankruptcy Rule 2002(q)(1), (d) all other parties that request notice in these cases pursuant to Bankruptcy Rule 2002 prior to the date of such service, (e) all parties the Joint Managers believe to be affected by the relief requested pursuant to the Local Bankruptcy Rule for the Eastern District of New York 9013-1, and (f) all other parties that this Court may direct, as set forth in the Joint Managers' separate contemporaneously filed motion to establish notice procedures in this Chapter 15 Case.  The Joint Managers submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

62.     No previous request for the relief sought herein has been made to the Court or any other court.

19

**CONCLUSION**

WHEREFORE, the Joint Managers respectfully requests that the Court (a) enter the

proposed Recognition Order, upon notice and a hearing, substantially in the form attached hereto

as **Exhibit A**, and (b) grant such other and further relief as may be just and proper.

Dated:  New York, New York
        June 4, 2026

HUGHES HUBBARD & REED LLP

By: */s/ Christopher K. Kiplok*
     Christopher K. Kiplok
     Dustin P. Smith
     Erin E. Diers
     Elizabeth A. Beitler
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: chris.kiplok@hugheshubbard.com
        dustin.smith@hugheshubbard.com
        erin.diers@hugheshubbard.com
        elizabeth.beitler@hugheshubbard.com

*Counsel to the Joint Managers of*
*Euro Exchange Securities UK Limited*

Docusign Envelope ID: A32BD9F7-8110-8D44-83CE-5CF347210EAB

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, James Bennett hereby declares as follows:

I am a foreign representative of Euro Exchange Securities UK Limited.  I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Main Proceeding and Related Relief*, including each of the attachments and appendices thereto (the "Chapter 15 Petition").  I have read the foregoing Chapter 15 Petition, and am informed and do believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of June, 2026

Signed by:

James Bennett
Interim Joint Manager
Euro Exchange Securities UK Limited

**EXHIBIT A**

**Proposed Recognition Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>Euro Exchange Securities UK Limited,<br><br>              Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-_____ |

**[PROPOSED] ORDER GRANTING RECOGNITION OF**
**FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

Upon consideration of the *Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* [ECF No. ____] (together with the *Chapter 15 Petition for Recognition of a Foreign Proceeding (Official Form 401)* filed contemporaneously therewith, the "Petition"), the Declaration of James Bennett (the "Bennett Declaration"), and the Declaration of Ian Stuart Johnson (the "Johnson Declaration") (together with the Petition and the Bennett Declaration, the "Chapter 15 Pleadings"), each filed on June 4, 2026, by or on behalf of Duncan Perring and James Bennett of Teneo Financial Advisory Limited, in their capacities as duly appointed joint managers (together, the "Joint Managers") of Euro Exchange Securities UK Limited (the "Debtor"); and it appearing that an application for special administration against the Debtor was filed before the High Court of Justice, Business and Property Courts of England and Wales, Insolvency and Companies List (ChD) (the "UK Court") in case number CR-2026-004370 (the "UK Proceeding") on June 2, 2026; and this Court having found that it has jurisdiction to consider the Petition and the relief requested therein pursuant to 28 U.S.C. §§ 157(a) and 1334 and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), titled *In the Matter of The Referral of Matters to the Bankruptcy Judges*, 69 B.R. 186, App. 3 (E.D.N.Y. August 28, 1986) (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.); and consideration of the Petition and

the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and venue of this proceeding being proper before this Court pursuant to 28 U.S.C. § 1410; and this Court having found that proper and adequate notice of the Petition and the relief requested therein has been provided in accordance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), and that no other or further notice is necessary; and this Court having considered and reviewed the Chapter 15 Pleadings and having held a hearing to consider the relief requested in the Petition on _____, 2026 (the "Hearing"); and it appearing that timely notice of the filing of the Chapter 15 Pleadings and the Hearing has been given; and upon all of the proceedings had before this Court; and no objections or other responses having been filed that have not been overruled, withdrawn or otherwise resolved; and after due deliberation and sufficient cause appearing therefor;

**THIS COURT HEREBY FINDS AND CONCLUDES THAT:**

1. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

2. The Debtor has property located in the United States, and, therefore, is "eligible" to be a debtor in this Chapter 15 Case pursuant to sections 109 and 1501 of the Bankruptcy Code.

3. This Chapter 15 Case was properly commenced pursuant to sections 1504 and 1509 of the Bankruptcy Code.

4. The Petition satisfies the requirements of section 1515 of the Bankruptcy Code.

5. The official form petition of the Debtor satisfies Bankruptcy Rules 1007(a)(4) and 2002.

6. The UK Proceeding is a "foreign proceeding" as such term is defined in section 101(23) of the Bankruptcy Code.

7. The UK Proceeding is pending in the United Kingdom, which is the jurisdiction in which the Debtor has its "center of its main interests" within the meaning of such term in section 1517(b)(1) of the Bankruptcy Code. As such, the UK Proceeding is a "foreign main proceeding" pursuant to section 1502(4) of the Bankruptcy Code, which is thereby entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code and to all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code.

8. The Joint Managers, Duncan Perring and James Bennett, are "persons" as such term is defined in section 101(41) of the Bankruptcy Code, and they have been duly appointed by the UK Court and have been authorized to act as "foreign representatives" of the Debtor with respect to the UK Proceeding within the meaning of section 101(24) of the Bankruptcy Code.

9. The relief granted hereby is necessary and appropriate, in the interests of the public and of international comity, not inconsistent with the public policy of the United States, warranted pursuant to sections 105(a), 362, 1504, 1507, 1509, 1510, 1515, 1517, 1520 and 1521 of the Bankruptcy Code, and will not cause hardship to creditors of the Debtor or other parties-in-interest that is not outweighed by the benefits of granting that relief.

10. The principles of comity support recognition of the UK Order appointing the Joint Managers as joint managers pursuant to Payment and Electronic Money Institution Insolvency Regulations 2021 (S.I. 2021/716), as well as the enforcement by this Court of the UK Order within the territorial jurisdiction of the United States.

11.     The Joint Managers have demonstrated that the relief requested with respect to entrustment of the Debtor's assets under section 1521(a)(5) of the Bankruptcy Code is necessary and appropriate, consistent with the principles of comity, consistent with the purposes and objectives of chapter 15 of the Bankruptcy Code, not inconsistent with the public policy of the United States and warranted pursuant to section 1521(a)(5) of the Bankruptcy Code.

12.     Absent the requested relief, the efforts of the Joint Managers in conducting the UK Proceeding may be delayed or thwarted by interference with the Debtor's assets, a result inimical to the purposes of chapter 15 as reflected in section 1501(a) of the Bankruptcy Code.

13.     All creditors and other parties-in-interest, including the Debtor, are sufficiently protected in the relief granted in this Order as required under section 1522(a) of the Bankruptcy Code.  For all of the foregoing reasons and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

14.     The Verified Petition and the relief requested are GRANTED as set forth herein, and any objections or responses thereto that have not been withdrawn or resolved are overruled with prejudice.

15.     The UK Proceeding is granted recognition as a "foreign proceeding" as such term is defined in section 101(23) of the Bankruptcy Code and pursuant to section 1517(a) of the Bankruptcy Code.

16.     The UK Proceeding is granted recognition as a "foreign main proceeding" as such term is defined in section 1502(4) of the Bankruptcy Code and pursuant to section 1517(b)(1) of the Bankruptcy Code.

4

17.     Throughout the duration of this Chapter 15 Case or until otherwise ordered by this Court, all relief and protection afforded to a foreign main proceeding under section 1520 of the Bankruptcy Code is hereby granted to the UK Proceeding, the Joint Managers, and the Debtor's property located in the United States, as applicable, including, without limitation, the application of the automatic stay under section 362 of the Bankruptcy Code to the Debtor and its property located in the territorial jurisdiction of the United States.

18.     The Joint Managers are recognized as "foreign representatives," as such term is defined in section 101(24) of the Bankruptcy Code, in respect of the UK Proceeding.  The Joint Managers are authorized to act on behalf of the Debtor in this Chapter 15 Case.

19.     Each Joint Manager is entrusted with the administration or realization of all of the Debtor's property within the territorial jurisdiction of the United States as set forth in section 1521(a)(5) of the Bankruptcy Code.

20.     The UK Proceeding, the UK Order, and any other orders entered by the UK Court in the UK Proceeding as of the date of this Order shall be and hereby are granted comity and given full force and effect in the United States.

21.     This Order is without prejudice to the Joint Managers requesting any additional relief in this Chapter 15 Case, including seeking recognition and enforcement in the United States of any further orders issued by the UK Court.

22.     No action taken by the Joint Managers, the Debtor, or their respective successors, agents, representatives, advisors or counsel, in preparing, disseminating, applying for, implementing or otherwise acting in furtherance of the UK Proceeding, the documents contemplated thereunder, this Order, this Chapter 15 Case, any further order for additional relief in this Chapter 15 Case or any adversary proceedings in connection therewith, will be deemed to

constitute a waiver of the immunity afforded such persons under sections 306 or 1510 of the Bankruptcy Code.

23. The Joint Managers, the Debtor and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules, the Local Rules or the orders of this Court.

24. The Joint Managers are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

25. No party shall incur any liability for following the terms of this Order, whether by acting or refraining from acting, except in the case of the party's own gross negligence or willful misconduct.

26. Notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules to the contrary, including, without limitation, Bankruptcy Rules 1018, 7062 and 9014, (a) this Order shall be effective immediately and enforceable upon its entry, (b) the Joint Managers are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order and (c) this Order shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

27. This Court shall retain jurisdiction with respect to the implementation, enforcement, amendment and modification of this Order.

Dated: New York, New York
_____ __, 2026

HONORABLE _____
UNITED STATES BANKRUPTCY JUDGE

6